Richard G. Himelrick (# 004738)
J. James Christian (# 023614)
TIFFANY & BOSCO P.A.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ  85016-9240
Tel:    602-255-6000
Fax:    602-255-0103
rgh@tblaw.com; jjc@tblaw.com
*Local Counsel for Apollo Institutional*
*Investor Group*

Jay W. Eisenhofer
Geoffrey C. Jarvis
Jeff A. Almeida
GRANT & EISENHOFER P.A.
1201 North Market Street
Wilmington, DE  19801
jeisenhofer@gelaw.com; gjarvis@gelaw.com
Tel:    (302) 622-7155
Fax:    (302) 622-7100
*Attorneys for the Apollo Institutional*
*Investor Group*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas N. Gaer, individually and on behalf of all other similarly situated stockholders,<br><br>Plaintiff,<br><br>v.<br><br>Apollo Group, Inc.; John Sperling; Gregory W. Cappelli; Charles B. Edelstein; Gregory J. Iverson; Joseph L. D'Amico; and Brian L. Swartz,<br><br>Defendants. | No. 2:10-cv-01735-GMS<br><br>**THE APOLLO INSTITUTIONAL INVESTOR GROUP'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS REQUEST FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

[caption continued on next page]

1
2     John T. Fitch, individually and on behalf of all          No. 2:10-cv-02044-FJM
      other similarly situated stockholders,
3
4                              Plaintiff,
5                          v.
6     Apollo Group, Inc.; John Sperling; Gregory W.
      Cappelli; Charles B. Edelstein; Gregory J.
7     Iverson; Joseph L. D'Amico; and Brian L.
8     Swartz,
                               Defendants.
9     ────────────────────────────────────────
10
      Robert Roth, individually and on behalf of all           No. 2:10-cv-02121-ROS
11    other similarly situated stockholders,
12                             Plaintiff,
13
14                         v.
15    Apollo Group, Inc.; John Sperling; Gregory W.
      Cappelli; Charles B. Edelstein; Gregory J.
16    Iverson; Joseph L. D'Amico; Brian L. Swartz;
      Brian Mueller; Terri C. Bishop; and Peter V.
17    Sperling,
18
                               Defendants.
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................3

      A.     BACKGROUND.............................................................................3

      B.     DEFENDANTS' FRAUDULENT SCHEME............................................3

      C.     THE TRUTH BEGINS TO EMERGE ...................................................4

ARGUMENT ..................................................................................................................5

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...........................5

II.    THE APOLLO INSTITUTIONAL INVESTOR GROUP SHOULD BE
APPOINTED LEAD PLAINTIFF ......................................................................7

      A.     THE APOLLO INSTITUTIONAL INVESTOR GROUP HAS TIMELY FILED
THIS MOTION ............................................................................9

      B.     THE APOLLO INSTITUTIONAL INVESTOR GROUP BELIEVES IT HAS THE
LARGEST FINANCIAL INTERESTS AT STAKE...................................9

      C.     THE APOLLO INSTITUTIONAL INVESTOR GROUP IS AN APPROPRIATE
LEAD PLAINTIFF GROUP ...........................................................10

      D.     THE APOLLO INSTITUTIONAL INVESTOR GROUP SATISFIES THE
REQUIREMENTS OF RULE 23 ......................................................12

            1.     The Apollo Institutional Investor Group's Claims Are Typical
Of The Class's Claims ..........................................................13

            2.     The Apollo Institutional Investor Group Will Adequately
Represent The Interests Of The Class............................................15

III.   THE COURT SHOULD APPROVE THE APOLLO INSTITUTIONAL
INVESTOR GROUP'S CHOICE OF COUNSEL ..............................................16

CONCLUSION ..............................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allstate Life Ins. Co. v. Robert W. Baird & Co. Inc.,*
    Nos. CV-09-8162-PHX-GMS, CV-09-8174-PHX-GMS,
    2010 WL 625566 (D. Ariz. Feb. 17, 2010)................................................................ 11

*Aronson v. McKesson HBOC, Inc.,*
    79 F. Supp. 2d 1146, 1157-8 (N.D. Cal. 1999)........................................................ 10

*Borenstein v. Finova Group Inc.,*
    No. Civ. 00-619PHXSMM, 2000 WL 34524743
    (D. Ariz. Aug. 30, 2000) .......................................................................................... 6, 7

*Bowman v. Legato Sys.,*
    195 F.R.D. 655 (N.D. Cal. 2000).................................................................................. 7

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ...........................................................................*passim*

*Eichenholtz v. Verifone Holdings, Inc.,*
    No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)...................... 1

*Ferrari v. Gisch,*
    225 F.R.D. 599 (C.D.Cal. 2004) ................................................................................ 10

*Ferrari v. Impath, Inc.,*
    No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15,
    2004) ............................................................................................................................. 6

*Garber v. Juniper Networks, Inc.,*
    No. C 06-04327 JW, 2006 U.S. Dist. LEXIS 86721 (N.D. Cal. Nov. 20, 2006) ........ 6

*Hall v. Medicis Pharm. Corp.,*
    No. CV-08-1821-PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) .......*passim*

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ..................................................................................... 14

*Hodges v. Akeena Solar, Inc.,*
    263 F.R.D. 528, 531 (N.D. Cal. 2009)....................................................................... 10

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990).............................. 6

ii

*Lee v. Ambroseo, et al.*,
 No. C 07-0955 JF (HRL), 2007 WL 1558565 (N.D. Cal. May 29, 2007) .................7

*In re Nature's Sunshine Prods., Inc.*,
 No. 2:06-CV-267, 2006 WL 2380965 (D. Utah Aug. 16, 2006)..............................12

*In re Northwestern Corp. Sec. Litig.*,
 299 F. Supp. 2d 997 (D.S.D. 2003) ..........................................................................12

*In re Party City Sec. Litig.*,
 189 F.R.D. 91 (D.N.J. 1999)......................................................................................15

*Plichta v. SunPower Corp.*,
 No. 09 Civ. 05473, Dkt. No. 70 (N.D. Cal. Mar. 5, 2010) .......................................11

*Query v. Maxim Integrated Prods., Inc.*,
 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) ..............................................................10

*State Universities Ret. Sys. Of Illinois v. Sonus Networks, Inc.*,
 2006 WL 3827441 (D. Mass. Dec. 27, 2006)............................................................13

*Schriver v. Impac Mortgage Holdings, Inc.*,
 No. SACV 06-31, 2006, U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ...........11

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
 No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217
 (D. Ariz. Sept. 11, 2007)....................................................................... 13, 14, 15, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)....................................................................................................7

*In re Universal Access Inc. Sec. Litig.*,
 209 F.R.D. 379 (E.D. Tex. 2002) ..............................................................................13

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
 589 F. Supp. 2d 388 (S.D.N.Y. 2008) .......................................................................12

*In re Versata, Inc. Sec. Litig.*,
 No. C 01-1439, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) .........................11, 12

*In re White Electronic Designs Corp. Sec. Litig.*,
 416 F. Supp. 2d 754 (D. Ariz. 2006) .........................................................................11

*Yanek v. Staar Surgical Co.*,
 No. CV 04-8007, 2004 U.S. Dist. LEXIS 30953 (C.D. Cal. Dec. 15, 2004) ...........11

iii

THE APOLLO INSTITUTIONAL INVESTOR GROUP'S MOTION AND MEMORANDUM OF LAW I/S/O ITS REQUEST
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL

STATUTES

15 U.S.C. § 78u-4(a)(3) .......................................................................................*passim*

OTHER AUTHORITIES

Rule 23 of the Federal Rules of Civil Procedure .......................................... 1, 3, 12, 13,14

Rule 42 of the Federal Rules of Civil Procedure ............................................................ 6

S. REP. NO. 104-98 (1995) (Conf. Rep.)
    1995 WL 709276 ....................................................................................................... 2

H.R. REP. NO. 104-369 (1995) (Conf. Rep.)
    1995 WL 372783 ....................................................................................................... 2

1 H. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.13 (4th ed. 2007) ........................... 14

**PRELIMINARY STATEMENT**

The Oregon Public Employees Retirement Fund ("OPERF"), the Mineworkers' Pension Scheme ("MPS") and Amalgamated Bank[1] (collectively, the "Apollo Institutional Investor Group") respectfully submit this motion and memorandum of law in support of its request for (i) consolidation of all related actions under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42(a) of the Federal Rules of Civil Procedure; (ii) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA; and (iii) approval of its selection of Grant & Eisenhofer P.A. ("G&E") as Lead Counsel and Tiffany & Bosco, P.A. ("T&B") as Local Counsel for the Class.[2]

The Apollo Institutional Investor Group is presumptively the "most adequate plaintiff," as defined by the PSLRA, because it has the largest financial interest in this action and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). As a result of its trading in securities of the Apollo Group, Inc. ("Apollo" or the "Company") during the relevant period, the Apollo Institutional Investor Group suffered losses of ***$21.7 million*** under a first-in-first-out ("FIFO") methodology and ***$21.4 million*** under a last-in-first-out ("LIFO") methodology.[3] In

---

[1] Amalgamated Bank moves in its capacity as Trustee for the LongView LargeCap 500 Index Fund, the LongView LargeCap 500 Index VEBA Fund, the LongView Quantitative LargeCap Fund, and the LongView Quantitative LargeCap VEBA Fund.

[2] Three related securities fraud class actions are pending in this District: *Gaer v. Apollo Group, Inc., et al.*, C.A. No. 2:10-cv-01735-GMS (D. Ariz., August 13, 2010); *Fitch v. Apollo Group, Inc., et al.*, C.A. No. 2:10- cv-02044-FJM (D. Ariz., September 23, 2010); and *Roth v. Apollo Group, Inc., et al.*, C.A. No. 2:10-cv-02121-ROS (D. Ariz., October 4, 2010) (collectively the "Related Cases"). Plaintiffs in these actions all allege violations of the Exchange Act on behalf of a class of Apollo stock purchasers during class periods ending on August 3, 2010. The start dates of the various proposed class periods differ. For purposes of this motion, the period from February 12, 2007 through August 3, 2010, inclusive, will be referred to as the "Class Period," because it is the longest and most inclusive. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (finding that for purposes of appointing lead plaintiff, it was appropriate to utilize the longest potential class period).

[3] These commonly applied and accepted loss calculation methodologies are discussed further below. Additional detail regarding the losses of individual members of the

---

1   addition, as evidenced by the PSLRA Certifications (Almeida Decl., Exs. A, B, C and

2   D) and the Joint Declaration submitted herewith, the Apollo Institutional Investor Group

3   is comprised of sophisticated institutional investors with substantial experience serving

4   as fiduciaries and have committed to working together cooperatively to fulfill the duties

5   and obligations of Lead Plaintiff.

6        The relief sought by the Apollo Institutional Investor Group is precisely what the

7   framers of the PSLRA intended to accomplish by enacting the PSLRA's lead plaintiff

8   provisions – to have complex class actions arising under the federal securities laws

9   controlled by large institutional investors.  The framers of the PSLRA contemplated that

10  institutional investors had both the resources and acumen to assume control of securities

11  litigation for the benefit of all class members.  As Congress noted in the Statement of

12  Managers, the PSLRA was intended "to increase the likelihood that institutional

13  investors will serve as lead plaintiffs" because, among other reasons, institutional

14  investors and other class members with large amounts at stake "will represent the

15  interests of the plaintiff class more effectively than class members with small amounts

16  at stake."  Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369,

17  at *34 (1995) (Conf. Rep), 1995 WL 709276; S. REP. NO. 104-98, at *11 (1995) (Conf.

18  Rep), 1995 WL 372783.   As sophisticated institutional investors, the Apollo

19  Institutional Investor Group is accustomed to acting in a fiduciary capacity and has

20  significant experience in financial and legal matters that will benefit the Class.

21       Most important, the Apollo Institutional Investor Group believes that its financial

22  interest is the largest of any class member seeking appointment as lead plaintiff.  The

23  Apollo Institutional Investor Group is not aware of any other class member that has

24

25  group, moreover, are contained in the PSLRA-required Certifications attached herewith
    as Exhibits A, B and C to the Declaration of Jeff A. Almeida in Support of the Apollo
26  Institutional Investors' Motion For Consolidation, Appointment As Lead Plaintiff, and
    Approval Of Its Selection Of Counsel ("Almeida Decl.").  *See* Almeida Decl., Exs. A,
27  B, and C (Schedule A, Charts of Class Period Transactions, reflecting the losses of the
    Apollo Institutional Investor Group members as follows:  OPERF -- $10,435,590 (FIFO
28  & LIFO); MPS -- $8,323,659 (FIFO & LIFO); Amalgamated Bank -- $2,942,152
    (FIFO), $2,645,863 (LIFO).

filed an action or an application for appointment as lead plaintiff that suffered greater losses due to the Defendants' fraud.  In addition, the Apollo Institutional Investor Group satisfies each of the applicable requirements of the PSLRA and Rule 23 and, therefore, is qualified for appointment as lead plaintiff in this action.  Accordingly, the Apollo Institutional Investor Group respectfully requests appointment as Lead Plaintiff, and the approval of its selection of Lead and Local Counsel.

## STATEMENT OF FACTS

### A.  BACKGROUND

Defendant Apollo was founded in 1973 by Defendant John Sperling and today is one of the largest private education providers in the United States.  The Company offers educational programs, both online and on-campus, at the high school, undergraduate, graduate and doctoral levels through its subsidiaries: University of Phoenix ("UOP") (which accounts for 95% of the Company's consolidated net revenue), Institute for Professional Development, College for Financial Planning, Western International University, and others.  The Company's programs and services are provided in 40 states and the District of Columbia, Puerto Rico, Canada, Latin America, and Europe, as well as online throughout the world.

### B.  DEFENDANTS' FRAUDULENT SCHEME

Throughout the Class Period, Defendants' statements and filings with Securities and Exchange Commission ("SEC") presented Apollo as a stable company with competent management, reliable internal controls and strong growth prospects. Defendants consistently reported increasing enrollment, student retention and net tuition pricing, which generated double-digit revenue growth, facilitated new service offerings and (it was assured) improved academic quality for students.   Apollo outwardly appeared to be well positioned to remain a profitable and successful business, or as Apollo put it –  "a leader and change agent in higher education."[4]

---

[4] *See* Apollo Group, Inc. website, http://www.apollogrp.edu/History.aspx

3

1    Apollo's apparent success, however, was hardly the product of an astute re-

2    investment strategy and a commitment to providing quality educational opportunities.

3    Rather, Defendants concocted a scheme to fraudulently inflate revenues and boost

4    profitability by exploiting well-intentioned and often lower-income students, including

5    veterans of the U.S. armed forces, who were hoping to improve their qualifications and

6    employment prospects.  By aggressively "recruiting" and enrolling students in Apollo's

7    targeted demographic, Defendants presented a picture of burgeoning enrollment and

8    increasing revenues, while assuring investors that it remained powerfully committed to

9    compliance with federal Title IV student loan rules and regulations.  But Defendants, in

10   reality, were building a house of cards.  Many students were lured into paying for

11   courses through improper disclosures of tuition and costs (which were often far in

12   excess of the cost of a traditional public or private university) and through

13   misstatements meant to conceal the schools' poor post-graduation "gainful

14   employment" rates.  In certain instances, as was revealed at the end of the Class Period,

15   prospective students were encouraged to falsify financial aid forms, thereby allowing

16   Apollo to tap deeper into federal student loan monies to boost its reported revenues.

17   Not surprisingly, students often withdrew early or failed to complete degree

18   programs once the misleading marketing was exposed.  Nevertheless, Apollo continued

19   to recognize revenue related to these early withdraws, and failed to take adequate

20   reserves for bad debt, even though Apollo itself knew it was highly unlikely that it could

21   collect from the same low income demographic that it had intentionally targeted.

22   Defendants deceived investors by creating the impression that Apollo was a profitable

23   enterprise, when, in reality, its revenues and profitability were built on false promises

24   and accounting manipulations.

25   **C.    THE TRUTH BEGINS TO EMERGE**

26   Apollo's share price remained artificially inflated throughout the Class Period,

27   and its troubles began on October 27, 2009, when Apollo disclosed in an earnings press

28   release that it was subject to an informal SEC investigation into its revenue recognition

4

practices.  While the SEC has not revealed the specific nature of its investigation, the Company revealed that the SEC requested information and documents from the Company and its auditors related to its revenue recognition practices and other matters, including its policies and practices relating to student refunds, the return of Title IV student loan funds to lenders, and bad debt reserves.

In reaction to the October earnings release, shares of Apollo plummeted on October 28, 2009, dropping $12.91 per share or 17.7% from $72.97 per share to $60.06 per share, wiping out nearly $2 billion in market capitalization.  The Company's stock price continued to trade lower over the next several months and remained deflated with an average closing price of $58 per share over the 90 days subsequent to the disclosures.

In 2010, Apollo's stock price continued to crumble in reaction to, among other things, political calls for more oversight of the for-profit college industry, and Congressional hearings that exposed certain of Apollo's unsavory and improper business practices.  By August 2, 2010, Apollo's stock was trading in the $46 range, but it was again rocked when it was revealed during a Senate investigation and in a report submitted and presented to Senate investigators by the Government Accountability Office that Apollo was committing widespread marketing fraud.  By August 6, 2010, Apollo touched a new low of $41.11, before closing at $42.49 per share.  By August 13, 2010, shares of Apollo were trading at $38.94.  Investors lost billions.

## **ARGUMENT**

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides, among other things, for the consolidation of related actions brought under the federal securities laws.   Section 21D(a)(3)(B)(ii) of the Exchange Act provides:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this Act has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under § 21D(a)(3)(B)(i)] until after the decision on the motion to consolidate is rendered.

5

15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thus, under the PSLRA, the Court should first rule on consolidation, and should then determine the lead plaintiff and lead counsel.  *See, e.g., Borenstein v. Finova Group Inc.*, No. Civ. 00-619PHXSMM, 2000 WL 34524743, at *3 (D. Ariz. Aug. 30, 2000); *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *12 (S.D.N.Y. July 15, 2004).

Under Rule 42(a) of the Federal Rules of Civil Procedure:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  *See* Fed. R. Civ. P. 42(a).

Here, consolidation of the Related Cases is appropriate because the actions involve common questions of law and fact.  The Related Cases involve claims on behalf of investors who purchased Apollo securities during the Class Period in reliance on the same materially false and misleading statements and omissions.  All of the claims arise under Exchange Act, and all involve substantially the same issues with respect to class certification.  As a result, consolidation is warranted.  *See, e.g., Hall v. Medicis Pharm.*, No. CV-08-1821-PHX-GMS, 2009 WL 648626, at *1 (D. Ariz. Mar. 11, 2009) ("[C]onsolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports.") *quoting Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y.1992); *Garber v. Juniper Networks, Inc.*, No. C 06-04327 JW, 2006 U.S. Dist. LEXIS 86721, at *4 (N.D. Cal. Nov. 20, 2006) (same).

In addition, the Related Cases will undoubtedly involve overlapping discovery of parties and non-parties.  Accordingly, consolidation for all purposes is appropriate to foster judicial economy and efficiency.  *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation.").  The Court should therefore direct that any subsequently-filed related actions be consolidated with these proceedings.

6

## II.    THE APOLLO INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA's lead plaintiff provisions were enacted in response to concerns that "the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint." *Lee v. Ambroseo, et al.*, No. C 07-0955 JF (HRL), 2007 WL 1558565 (N.D. Cal. May 29, 2007); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (noting Congress's dissatisfaction with the "race to the courthouse" mechanism for selecting lead plaintiff prior to enactment of the PSLRA).    More particularly, the legislative history of the PSLRA reflects Congress's desire to "promote the goal of attracting institutional investors" by "requir[ing] that the plaintiff with the largest stake in the outcome of the case serve as lead plaintiff." *Id.* at 738; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (PSLRA was "aimed to increase the likelihood that institutional investors … would serve as lead plaintiffs").   Here, the Apollo Institutional Investor Group is precisely the type of lead plaintiff envisioned by the Congress in enacting the PSLRA.   As sophisticated funds, collectively managing tens of billions of dollars in assets, the Apollo Institutional Investor Group is accustomed to acting in a fiduciary capacity, and its experience in financial and legal matters will substantially benefit the Class. *See Finova Group*, 2000 WL 34524743, at *9 (noting that the appointment of the Louisiana School Employees' Retirement System as lead plaintiff "will satisfy the Congressional goal of increasing the role of institutional investors as the managers of securities class actions"); *see also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657  (N.D. Cal. 2000) ("There is no doubt that Detroit [a public pension fund] is eligible. . . Detroit is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements [of the PSLRA].")

The PSLRA provides that, in determining lead plaintiff, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members

7

. . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).  Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court **shall adopt a presumption that the most adequate plaintiff** in any private action arising under this chapter **is the person or group of persons that** –
>
>> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>>
>> (bb)  in the determination of the court, **has the largest financial interest in the relief sought by the class**; and
>>
>> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added).

Thus, the PSLRA requires that, in determining which class member to appoint as lead plaintiff pursuant to the PSLRA, the Court considers three factors: (1) which class members have either filed complaints or made motions in response to a notice of their right to seek appointment as lead plaintiff; (2) of the plaintiffs that have filed complaints or appropriate motions, which one has the largest financial interest in the litigation; and (3) whether the movant with the largest financial interest otherwise satisfies the criteria of Rule 23.  If the movant with the largest financial interest satisfies the applicable Rule 23 criteria, it is presumed to be the "most adequate" plaintiff.  That presumption can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff … will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)

As set forth below, the Apollo Institutional Investor Group has timely filed this Motion in accordance with the statutory requirements, and it has the largest financial interest in the litigation of the Class members who have come forward to date.  Additionally, its claims are typical of those of the other Class members, and it has the resources, expertise and willingness to be fully involved in this litigation and to obtain

8

the maximum possible compensation for the Class.  Indeed, the Apollo Institutional Investor Group is exactly the type of lead plaintiff envisioned by Congress.  Accordingly, the Apollo Institutional Investor Group should be appointed.

### A.    THE APOLLO INSTITUTIONAL INVESTOR GROUP HAS TIMELY FILED THIS MOTION

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within sixty days of the publication of the notice announcing the filing of the action.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

On August 16, 2010, the plaintiff in the *Gaer* case published a notice of the action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i).  Almeida Decl. Ex. D.  The notice advised class members of the existence of the lawsuit and described the claims asserted therein.  The notice also advised class members of their right to file a motion to be appointed as lead plaintiff within sixty days of the date of the notice.  The Apollo Institutional Investor Group has filed this Motion within sixty days of the notice.  Therefore, this Motion has been filed within the time period prescribed by the PSLRA

### B.    THE APOLLO INSTITUTIONAL INVESTOR GROUP BELIEVES IT HAS THE LARGEST FINANCIAL INTERESTS AT STAKE

As set forth below, the Apollo Institutional Investor Group is presumptively the most adequate plaintiff, because it has the greatest financial interest.  *In re Cavanaugh*, 306 F.3d at 730 (applying the PSLRA and holding that "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.")

The Ninth Circuit has not set forth a mandatory formula to calculating financial interests under the PSLRA.  *See In re Cavanaugh*, 306 F.3d at 730 n.4 ("[T]he court may select accounting methods that are both rational and consistently applied").  Nor does the PSLRA mandate a particular method for of calculation.  However, other courts in this Circuit have considered the following factors: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by

9

the plaintiffs during the putative class period; and (3) the approximate loss suffered by the plaintiffs." *Ferrari v. Gisch*, 225 F.R.D. 599, 604 (C.D. Cal. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2000)); *see also Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157-8 (N.D. Cal. 1999) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) and *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).

Here, the Apollo Institutional Investor Group purchased 2,553,399 shares of common stock of Apollo during the Class Period and expended over $25.5 million in total net funds.  The total losses they suffered as a result of trading in Apollo securities during the Class Period is ***$21.7 million*** under a first-in-first-out ("FIFO") methodology and ***$21.4 million*** under a last-in-first-out ("LIFO") methodology.[5]  *See* Almeida Decl. Ex. A, B and C (Schedules A).   Thus, the Apollo Institutional Investor Group's collective financial losses far exceed that of any of the named plaintiffs in the Related Cases.  The Apollo Institutional Investor Group is not aware of any other movant with financial interests exceeding its own.

## C.   THE APOLLO INSTITUTIONAL INVESTOR GROUP IS AN APPROPRIATE LEAD PLAINTIFF GROUP

In determining the largest financial interest in the relief sought, the Exchange Act permits the financial interests of members of a class to be grouped together.  *See* Section 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (providing that the Court may appoint a "member or ***members***" of the purported plaintiff class as lead plaintiff and that the lead plaintiff is presumptively the "person or ***group of persons***" with the

---

[5]  In calculating a potential lead plaintiff's financial interest, "the court may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730, n.4.  Numerous courts have recognized the FIFO and LIFO methods to measure losses under the PSLRA.  *See*, *e.g.*, *Query v. Maxim Integrated Prods., Inc.*, 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) (calculating collective losses utilizing both FIFO and LIFO); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531 (N.D. Cal. 2009) (explaining that courts employ both FIFO and LIFO to measure losses).  Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions during the class period, starting with the earliest and moving chronologically forward.  Under LIFO, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.

1   largest financial interest in the relief sought by the class) (emphasis added).  Applying

2   the language of the statute, Courts in this Circuit have frequently granted lead plaintiff

3   status to groups comprising multiple members of the purported plaintiff class.[6]

4        Here, the members of the Apollo Institutional Investor Group determined to

5   jointly seek appointment as Lead Plaintiff to provide the Class with strong and diverse

6   leadership and to ensure that a broad base of Apollo securities purchasers will actively

7   direct this litigation.  *See* Joint Declaration ("Joint Decl.") at ¶¶ 2-6.  Indeed, the Apollo

8   Institutional Investor Group, comprised of both public and private funds from the U.S.

9   and abroad, provides both diverse expertise and experience as well as vast pool of

10  human and financial resources that will benefit the Class.  The members of the Apollo

11  Institutional Investor Group conferred telephonically with each other with respect to

12  their shared goals in this litigation and their desire to work with other sophisticated and

13  experienced institutional investors.  *Id.* at ¶¶ 7-8.  After weighing their options, the

14  members of the Apollo Institutional Investor Group authorized counsel to seek joint

15  appointment as Lead Plaintiff.

16       The Apollo Institutional Investor Group has also discussed a plan for litigating

17  this Action in an efficient manner beneficial to the Class, which includes supervision of

18  counsel and participation in a unified litigation strategy and process.  Joint Decl. ¶¶ 8-

19  11.  Such declarations and intra-group discussions are widely accepted as adequate

20  evidence in support of appointment of a lead plaintiff group.  *See*, *e.g.*, *Schriver v.*

21  *Impac Mortgage Holdings, Inc.*, No. SACV 06-31, 2006, U.S. Dist. LEXIS 40607, at

22

23  [6] *See*, *e.g.*, *Allstate Life Ins. Co. v. Robert W. Baird & Co. Inc.*, Nos. CV-09-8162-PHX-
     GMS, CV-09-8174-PHX-GMS, 2010 WL 625566, at *1 (D. Ariz. Feb. 17, 2010)
24   (appointing five shareholders); *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp.
     2d 754, 776 (D. Ariz. 2006) (discussing appointment of investor group consisting of
25   public pension fund and individual investor as lead plaintiff); *Yanek v. Staar Surgical*
     *Co.*, No. CV 04-8007, 2004 U.S. Dist. LEXIS 30953, at **15-16 (C.D. Cal. Dec. 15,
26   2004) (collecting cases); *In re Versata, Inc. Sec. Litig.*, No. C 01-1439, 2001 WL
     34012374, at *6 (N.D. Cal. Aug. 20, 2001) ("This Court therefore finds that under
27   appropriate circumstances small groups, whether or not they have any pre-litigation
     relationship, can aggregate their financial losses."); *Plichta v. SunPower Corp.*, No. 09
28   Civ. 05473, Dkt. No. 70 (N.D. Cal. Mar. 5, 2010) (appointing U.S. and foreign
     institutional investors as co-lead plaintiffs).

11

*30 n.11, *33 (C.D. Cal. May 1, 2006) (noting that courts consider submitted declarations to determine whether group will adequately represent the class and then appointing group of two who submitted a joint declaration); *Versata*, 2001 WL 34012374, at *7; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008), *citing Reimer v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411, et al., 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-CV-267, 2006 WL 2380965, at *1 (D. Utah Aug. 16, 2006); *In re Northwestern Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D. S.D. 2003).

Therefore, because the Apollo Institutional Investor Group is a small, cohesive group of institutional investors that have provided evidence of the manner in which they have determined to work together and their plan for joint oversight of the prosecution of this litigation, its members' financial interest is properly aggregated for this motion.

## D.   THE APOLLO INSTITUTIONAL INVESTOR GROUP SATISFIES THE REQUIREMENTS OF RULE 23

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the lead plaintiff must "otherwise satisf[y] the requirements of [Rule 23]."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc).  Rule 23(a) provides that a party may serve as a class representative as long as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy – must be evaluated when appointing a lead plaintiff, because only those two criteria address the characteristics of the lead plaintiff.  *See In re Cavanaugh*, 306 F.3d at 730.  The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of who should serve as lead plaintiffs.  Rather, the Court should defer examination of the remaining requirements until the lead plaintiffs move for class certification.  *See, e.g*,

12

1   *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-
2   2674-PHX-RCB, 2007 WL 2692217, at *5 (D. Ariz. Sept. 11, 2007) *citing Richardson*
3   *v. TVIA, Inc.*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007); *In re Universal*
4   *Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002).

5   Additionally, when evaluating the typicality and adequacy of a lead plaintiff
6   movant, "[t]he initial inquiry (i.e., the determination of whether the movant with the
7   largest interest in the case 'otherwise satisfies' Rule 23) should be confined to
8   determining whether the movant has made a *prima facie* showing of typicality and
9   adequacy." *State Universities Ret. Sys. Of Illinois v. Sonus Networks, Inc.*, 2006 WL
10  3827441, at *2 (D. Mass. Dec. 27, 2006) (quoting *In re Cendant Corp.*, 264 F.3d at
11  263-64); *Hall*, 2009 WL 648626 at *2 ("[A]ll that is required is a preliminary showing
12  that the lead plaintiff's claims are typical and adequate.") (internal citations omitted).
13  In other words, "the threshold determination of whether the movant with the largest
14  financial losses satisfies the typicality and adequacy requirements should be a product
15  of the court's independent judgment, and … arguments by members of the purported
16  plaintiff class as to why it does not should be considered only in the context of
17  assessing whether the presumption has been rebutted."  *Sonus Networks, Inc.*, 2006
18  WL 3827441, at *2; *see also In re Cavanaugh*, 306 F.3d at 730 ("When the district
19  court makes its initial determination [regarding a plaintiff's adequacy and typicality], it
20  must rely on the presumptive lead plaintiff's complaint and sworn certification; there is
21  no adversary process to test the substance of those claims.") *citing In re Cendant Corp.*
22  *Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

23  As discussed below, the Apollo Institutional Investor Group satisfies both the
24  adequacy and typicality requirements of Rule 23(a).

25
26  **1.   The Apollo Institutional Investor Group's Claims Are Typical
        Of The Class's Claims**

27  Rule 23(a)(3) requires that "the claims . . . of the representative parties" be
28  "typical of the claims . . . of the class."  The typicality requirement of Rule 23(a)(3) is

13

1    satisfied when the named plaintiff has suffered the same injuries as the absent class

2    members, as a result of the same course of conduct by the defendants.  *Hanon v.*

3    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Hall*, 2009 WL 648626 at *3

4    ("Typicality is satisfied when each class member's claim arises from the same course of

5    events, and each class member makes similar legal arguments to prove the defendant's

6    liability.") (citation omitted).  Furthermore, "[u]nder [Rule 23's] permissive standards,

7    representative claims are 'typical' if they are reasonably co-extensive with those of

8    absent class members; they need not be substantially identical."  *Teamsters Local 617*

9    *Pension and Welfare*, 2007 WL 2692217, at *5 (internal quotation marks and citation

10   omitted); *see also* 1 H. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.13 (4th ed. 2007)

11   ("When it is alleged that the same unlawful conduct was directed at or affected both the

12   named plaintiff and the class sought to be represented, the typicality requirement is

13   usually met regardless of minor variations").

14          Here, the Apollo Institutional Investor Group's claims arise from the same course

15   of conduct as the claims of all other class members.  Like the other members of the

16   class, the Apollo Institutional Investor Group is an innocent victim of the Defendants'

17   fraudulent conduct, and purchased publicly-traded securities of Apollo during the Class

18   Period at prices it did not know to be artificially inflated.  The Apollo Institutional

19   Investor Group's losses, like the losses suffered by the other members of the Class, arise

20   from Apollo's misrepresentations regarding its operations, financial results and growth

21   prospects, and from the resulting deflation of the stock price when the truth about

22   Apollo was revealed.  Moreover, the Apollo Institutional Investor Group's claims arise

23   from the same statutes and legal theories as all other members of the Class.  Thus, the

24   Apollo Institutional Investor Group's claims are in all respects "typical" of the claims of

25   the Class.  *See Hall*, 2009 WL 648626, at *3 (finding movant made preliminary

26   showing of typicality where "[his] claims arise from the same course of events as those

27   of the broader class" and "[are] based on the same legal arguments as the rest of the

28   class"); *see also Teamsters Local 617 Pension and Welfare*, 2007 WL 2692217, at *6

(holding that movant satisfied test for typicality where, like other putative class members, it "purchased stock," "was adversely affected by [defendants'] allegedly false and misleading statements," and "suffered financial losses").

### 2.    The Apollo Institutional Investor Group Will Adequately Represent The Interests Of The Class

Rule 23(a)(4)'s "adequacy" requirement is satisfied if: (1) the interests of the class representative coincide with those of the class and (2) the representative has the ability to prosecute the action vigorously through the services of competent counsel. *See Teamsters Local 617 Pension and Welfare*, 2007 WL 2692217, at *6 (citing *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1233 (9th Cir.2007)).   "The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Apollo Institutional Investor Group easily meets the adequacy requirement. First, its interests are the same as those of other Class members, *i.e.*, to hold the Defendants liable for the consequences of their violations of the federal securities laws and for the damages caused to investors who purchased Apollo securities at artificially inflated prices.  There are no conflicts of interest between the members of the Apollo Institutional Investor Group and other Class members.

Further, the Apollo Institutional Investor Group has demonstrated its adequacy by submitting Certifications and a Joint Declaration reflecting each member's understanding of the obligations owed by a Lead Plaintiff to the Class.  *See* Joint Decl. at ¶¶ 2-12; Almeida Decl. Exs. A at ¶¶ 3, 6, 9; B at ¶¶ 3, 6, 8; & C at ¶¶ 3, 6, 8.  As set forth in the Certifications and in the Joint Declaration, the Apollo Institutional Investor Group has experience serving in the role of lead plaintiff in federal securities class action litigation, and each of the members of the Apollo Institutional Investor Group intends to actively monitor and vigorously pursue this action for the benefit of the Class. *See* Joint Decl. at ¶ 12; Almeida Decl. Exs. A at ¶ 7; B at ¶ 8, & C at ¶ 7.  Finally, as

15

1  explained below, the Apollo Institutional Investor Group has chosen Grant &
2  Eisenhofer P.A. – a firm with extensive experience and qualifications in securities
3  litigation – as its proposed Lead Counsel for the Class.  All of these facts support a
4  finding of adequacy.  *See Hall*, 2009 WL 648626, at *3 (finding movant satisfied the
5  adequacy test where there was no conflict of interest with other class members and he
6  "indicated his willingness to serve as the class representative … secured competent
7  counsel, and … has alleged a significant pecuniary interest in pursuing the claim"); *see*
8  *also Teamsters Local 617 Pension and Welfare*, 2007 WL 2692217, at *6.

9
10
**III.   THE COURT SHOULD APPROVE THE APOLLO INSTITUTIONAL
      INVESTOR GROUP'S CHOICE OF COUNSEL**

11          Pursuant to § 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), the
12  Apollo Institutional Investor Group selected and retained counsel to represent the Class,
13  subject to the Court's approval.  This Court should not disturb a lead plaintiff's choice
14  of counsel unless it is necessary to protect the interests of the class.  *See In re*
15  *Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is
16  an important client prerogative and we will not lightly infer that Congress meant to take
17  away this prerogative from securities plaintiffs.  And, indeed, it did not.  While the
18  appointment of counsel is made subject to the approval of the court, the [PSLRA]
19  clearly leaves the choice of class counsel in the hands of the lead plaintiff").

20          G&E is among the preeminent securities class action law firms in the country
21  and is currently serving as lead or co-lead counsel in several complex securities fraud
22  cases involving, *inter alia*, Satyam, Pfizer, UBS, Alstom, Merck and Refco.  G&E has
23  achieved national recognition in representing institutional investors, particularly public
24  pension funds, in federal securities fraud and related litigation.  As lead counsel, the
25  firm has recovered and collected over six billion dollars for shareholders.  G&E has
26  been lead counsel in some of the largest securities class actions in history, and in the
27  case with the largest recovery in the long history of the Delaware Court of Chancery.
28  *See* Grant & Eisenhofer biography (Almeida Decl. Ex. E).

Indeed, G&E has been lead counsel in several of the largest securities class actions in history, including *In re Tyco International Limited  Securities Litigation*, MDL No. 02-1335-B, in which a $2.975 billion settlement was achieved on behalf of the class; and *In re Global Crossing, Limited Securities & "ERISA" Litigation*, 02 Civ. 910, where settlements exceeded $345 million.  Most recently, G&E resolved securities litigation pending against Marsh & McLennan for $400 million.  G&E also has experience taking securities class actions to trial, having served as sole lead counsel in *In re Safety-Kleen Bondholders Litigation*, No. 00-CV-1145-17 (D.S.C.), which went to a jury trial and ended in judgments as a matter of law against two of the company's executives for nearly $200 million, and settlements with the remaining defendants shortly before closing arguments.  *See id.*

The Apollo Institutional Investor Group's selection of Local Counsel is Tiffany & Bosco, P.A.  Tiffany & Bosco is an Arizona firm with extensive class action and securities litigation experience.  It has been involved in some of the highest profile securities class actions filed in Arizona, recovering hundreds of millions of dollars for its clients.  *See* Tiffany & Bosco and Richard G. Himelrick, Esq. biographies (Almeida Decl. at Ex. F).  Accordingly, the Court should approve the Apollo Institutional Investor Group's selection of Grant & Eisenhofer P.A. as Lead Counsel and Tiffany & Bosco P.A. as Local Counsel for the Class.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Apollo Institutional Investor Group respectfully requests that the Court appoint the Apollo Institutional Investor Group to serve as Lead Plaintiff for the Class in the consolidated actions and approve its selection of Grant and Eisenhofer P.A. to serve as Lead Counsel and Tiffany & Bosco, P.A.. to serve as Local Counsel for the Class.

[signature page follows]

Dated:  October 15, 2010                Respectfully submitted,


                                        By:   /s/ *J. James Christian*
                                        Richard G. Himelrick
                                        J. James Christian
                                        TIFFANY & BOSCO P.A.
                                        Third Floor Camelback Esplanade II
                                        2525 East Camelback Road
                                        Phoenix, AZ  85016-9240
                                        Tel:    602-255-6000
                                        Fax:    602-255-0103
                                        *Local Counsel for the Apollo*
                                        *Institutional Investor Group*


                                        GRANT & EISENHOFER P.A.
                                        Jay W. Eisenhofer
                                        Geoffrey C. Jarvis
                                        Jeff A. Almeida
                                        485 Lexington Ave 29th Floor
                                        New York, New York 10017
                                        Tel:    (646) 722-8500
                                        Fax:    (646) 722-8501
                                        *Lead Counsel for the Apollo*
                                        *Institutional Investor Group*

18

1

CERTIFICATE OF SERVICE

2

3      I hereby certify that on October 15, 2010, I electronically filed the foregoing with

4   the Clerk of the Court using the CM/ECF system which will send notification of such

5   filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby

6   certify that I will mail the foregoing document or paper via the United States Postal

7   Service to the non-CM/ECF participants indicated on the Manual Notice list.

8      I certify under penalty of perjury under the laws of the United States of America

9   that the foregoing is true and correct.

10

11                                          /s/ *J. James Christian*
                                          J. James Christian

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE APOLLO INSTITUTIONAL INVESTOR GROUP'S MOTION AND MEMORANDUM OF LAW I/S/O ITS REQUEST
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF ITS SELECTION OF COUNSEL