**HAGENS BERMAN SOBOL SHAPIRO LLP**
Robert B. Carey #011186
Amy M. Wilkins #022762
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
E-Mail: rcarey@hbsslaw.com
       amyw@hbsslaw.com

**CARNEY WILLIAMS BATES BOZEMAN
& PULLIAM, PLLC**
Darrin L. Williams (*Pro Hac Vice pending*)
Randall K. Pulliam (*Pro Hac Vice pending*)
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500
Facsimile (501) 312-8505
E-Mail: dwilliams@carneywilliams.com
       rpulliam@carneywilliams.com

*Attorneys for Proposed Lead Plaintiff,
IBEW Local 640 and Arizona Chapter NECA Pension Trust Fund
and The City of Birmingham Retirement & Relief System*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| DOUGLAS N. GAER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APOLLO GROUP, INC., JOHN SPERLING, GREGORY W. CAPPELLI, CHARLES B. EDELSTEIN, GREGORY J. IVERSON, JOSEPH L. D'AMICO, and BRIAN L. SWARTZ,<br><br>Defendants. | No. CV 10-1735-PHX-GMS<br><br>**APOLLO INSTITUTIONAL INVESTOR GROUP'S MOTION FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Assigned to Hon. G. Murray Snow) |

010208-11 401709 V1

|  |  |
|---|---|
| JOHN T. FITCH, individually and on behalf of all other similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>APOLLO GROUP, INC., an Arizona corporation; JOHN SPERLING, an individual; GREGORY W. CAPPELLI, an individual; CHARLES B. EDELSTEIN, an individual; GREGORY J. IVERSON, an individual; JOSEPH L. D'AMICO, an individual; and BRIAN L. SWARTZ, an individual,<br><br>　　　　　　　　Defendants. | No. CV 10-2044-FJM<br>Honorable Frederick J. Martone |
| ROBERT ROTH, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>APOLLO GROUP, INC., JOHN SPERLING, GREGORY W. CAPPELLI, CHARLES B. EDELSTEIN, GREGORY J. IVERSON, JOSEPH L. D'AMICO, BRIAN L. SWARTZ, BRIAN MUELLER, TERRI C. BISHOP and PETER V. SPERLING,<br><br>　　　　　　　　Defendants. | No. CV-10-2121-ROS<br>Honorable Roslyn O. Silver |

Class members the IBEW Local 640 and Arizona Chapter NECA Pension Trust Fund and the City of Birmingham Retirement and Relief System (the "Apollo Institutional Investor Group"), by and through their counsel, will and do hereby move this Court on a date and at such time as may be designated by this Court, for an Order: (i) consolidating the related cases; (ii) appointing them as Lead Plaintiff; (iii) approving

their selection of the law firms of Hagens Berman Sobol Shapiro LLP and Carney Williams Bates Bozeman & Pulliam, PLLC and as co-lead counsel; and (iv) granting such other and further relief as the Court may deem just and proper.  In support of this Motion, the Apollo Institutional Investor Group submits a Memorandum of Law, the Declaration of Robert B. Carey and proposed form of order, the pleadings and filings herein and such other written or oral argument as may be presented to the Court.

This Motion is brought pursuant to Section 21D(a)(3) of the Securities Act of 1934, as amended by the Private Securities Litigation Reform of 1995 ("PSLRA"), on the grounds that Movant has timely filed this Motion, is the "most adequate plaintiff," meets the requirements of Federal Rule of Civil Procedure 23 and has selected and retained counsel with significant experience prosecuting securities fraud class actions to serve as counsel.

DATED October 15, 2010.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP


By   /s/Robert B. Carey
Robert B. Carey #011186
Amy M. Wilkins #022762
11 West Jefferson Street, Ste. 1000
Phoenix, AZ  85006
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

010208-11 401709 V1

| | |
|---|---|
| 1 | Darrin L. Williams |
| 2 | Randall K. Pulliam |
|   | Carney Williams Bates Bozeman |
| 3 | & Pulliam, PLLC |
|   | 11311 Arcade, Suite 200 |
| 4 | Little Rock, AR 72212 |
|   | Tel: (501) 312-8500 |
| 5 | Fax: (501) 312-8505 |
| 6 | |
| 7 | Steve W. Berman, WSBA #12536 |
| 8 | Sean R. Matt, WSBA #12536 |
|   | 1918 Eighth Avenue, Suite 3300 |
| 9 | Seattle, Washington 98101 |
|   | Telephone: (206) 623-7292 |
| 10 | Facsimile: (206) 623-0594 |
|   | E-Mail: steve@hbsslaw.com |
| 11 | E-Mail: sean@hbsslaw.com |
| 12 | |
| 13 | Reed R. Kathrein |
|   | Peter E. Borkon |
| 14 | 715 Hearst Avenue, Suite 202 |
|   | Berkeley, California 94710 |
| 15 | Telephone: (510) 725-3000 |
| 16 | Facsimile: (510) 725-3001 |
|   | E-Mail: reed@hbsslaw.com |
| 17 | E-Mail: peterb@hbsslaw.com |
| 18 | |
|   | *[Proposed] Co-Lead Counsel* |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

010208-11 401709 V1

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................ 1

II. PROCEDURAL HISTORY ....................................................................................... 1

III. FACTUAL BACKGROUND ..................................................................................... 2

IV. LEGAL ARGUMENT ................................................................................................ 7

    A. The Related Actions Should Be Consolidated .............................................. 7

    B. The Apollo Institutional Investor Group Is Presumptively The Most Adequate Lead Plaintiff ................................................................................. 7

        1. The Procedure required by the Reform Act. ..................................... 7

        2. The Apollo Institutional Investor Group satisfies all lead plaintiff requirements of the Reform Act. ........................................................ 8

            a. The Apollo Institutional Investor Group has a significant financial interest in the relief sought by the class. .................. 9

            b. The Apollo Institutional Investor Group otherwise satisfies Rule 23. ................................................................................... 9

        3. As institutional investors, the Apollo Institutional Investor Group is the preferred choice to serve as lead plaintiff ............................... 10

        4. The Apollo Institutional Investor Group has selected well qualified counsel. ............................................................................................. 12

V. CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES** **PAGE**

**Cases**

*Bowman v. Legato Systems, Inc.,* 195 F.R.D. 655 (N.D. Cal. 2000) .......................... 11, 12

*Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 9, 2005) ..... 9

*Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) .................................................. 7

*Gluck v. CellStar Corp.,* 976 F. Supp. 542 (N.D. Tex. 1997) ........................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................. 9

*In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729 (S.D. Ind. 2000) ............................. 11

*In re Network Sec. Litig.,* 76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................... 11

*In re Tronox, Inc. Sec. Litig.*, 2009 U.S. Dist. Lexis 95349 (S.D.N.Y. Oct. 13, 2009) ...... 9

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990) ................................................... 7

*Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ....... 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................................... 10

*Takeda v. Turbodyne Technologies,* 67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...................... 9

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(I) ............................................................................................ 7

15 U.S.C. §§ 78u-4(a)(1), (a)(3)(B)(ii). ............................................................................. 7

15 U.S.C. §78u-4(a)(3)(B) ................................................................................................. 2

15 U.S.C.§ 78u-4(a)(3)(B)(ii) ............................................................................................ 7

**OTHER AUTHORITY** **PAGE**

Fed. R. Civ. P. 23(a) ...................................................................................................... 7, 10

H.R. Conf. Rep. No. 104-369, at 34 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ................................................................. 11

S. Rep. No.104-98, at 11 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Class members the IBEW Local 640 and Arizona Chapter NECA Pension Trust Fund (the "Electrical Workers Pension Fund") and the City of Birmingham Retirement and Relief System (referred to collectively as the "Apollo Institutional Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "Reform Act") and Rule 42 of the Federal Rules of Civil Procedure, for an order: (i) consolidating the Related Actions; (ii) appointing the Apollo Institutional Investor Group as lead plaintiff of a class of purchasers of the securities of Apollo Group, Inc. ("Apollo" or the "Company"); and (iii) approving the Apollo Institutional Investor Group's selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Carney Williams Bates Bozeman & Pulliam, PLLC ("Carney Williams") as co-lead counsel for the Class.

## II.     PROCEDURAL HISTORY

The first lawsuit against Defendants, *Gaer v. Apollo Group, Inc., et al.*, Case No. 10-cv-01735-MHB, was filed on August 16, 2010 in the District of Arizona by Douglas N. Gaer.  Gaer filed individually and on behalf of all persons or entities that purchased the common stock of Apollo between December 7, 2009 and August 3, 2010.[1]

The same day the complaint was filed, a notice of pendency was published on the Globe Newswire, a widely disseminated publication, informing investors of the *Gaer*

---

[1] Multiple cases have been filed against the Defendants in the District of Arizona. They include:  *Fitch v. Apollo Group, Inc. et al.*, 10-cv-02044 and *Roth v. Apollo Group, Inc. et al.*, 10-cv-02121.  The *Roth* case alleges a longer class period running from February 12, 2007 to August 3, 2010.

1  action. That notice advised Class Members of the existence of the lawsuit and described
2  the claims asserted.
3        Consistent with the terms of the PSLRA, the Apollo Institutional Investor Group
4  timely filed this motion for appointment as Lead Plaintiff within 60 days from the
5  publication of the notice of pendency of that action in the *Globe Newswire* press release.[2]

### III.   FACTUAL BACKGROUND

      Apollo is an Arizona corporation headquartered in Phoenix. Apollo subsidiary the University of Phoenix has grown to become the nation's largest private university. With more than 475,000 students attending the University of Phoenix, the school is one of the largest recipients of federal student aid, deriving more than 89% of its revenue from federal aid. In 2004-05 alone, the University of Phoenix received more than $1.8 billion in federal aid. Apollo offers degrees ranging from associate to doctoral in a variety of educational program areas worldwide, as well as at its campus and learning center locations in 39 states, the District of Columbia and Puerto Rico.

      Throughout the Class Period (February 12, 2007 through August 3, 2010), Apollo made numerous positive public statements in filings with the United States Securities and Exchange Commission ("SEC") and in the financial press that its student enrollment, revenues and profits were all growing and that its future growth projections were strong. However, now the Company is the subject of numerous federal securities fraud lawsuits alleging that its positive statements were materially false and misleading because:

---

[2] The Apollo Institutional Investor Group purchased Apollo's common stock during the relevant class period. The federal securities laws specifically authorize class members, regardless of whether they have filed a complaint, to move for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B). A copy of the Electrical Workers Pension Fund's Certification and the Birmingham Retirement System's Certification and chart summarizing their losses in Apollo common stock is attached as Exhibits 2 and 3 to the Declaration of Robert B. Carey in Support of Apollo Institutional Investor Group's Motion for Consolidation of Related Cases, Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Carey Declaration") submitted concurrently herewith.

1          (1) the Company had propped up its results by fraudulently inducing students to
2  enroll in its scholastic and educational programs and engaged in other manipulative and
3  deceptive recruiting tactics;
4          (2) Apollo had materially overstated the Company's growth prospects by failing to
5  properly disclose that it had engaged in illicit and improper recruiting activities, which
6  also had the effect of artificially inflating the Company's reported results and future
7  growth prospects; and
8          (3) Apollo did not maintain adequate systems of internal operational or financial
9  controls, which would have permitted the Company's reported operational statements and
10 foreseeable growth prospects to be true, accurate or reliable.
11         The complaints against Apollo further allege that Company insiders, while in
12 possession of the non-public, adverse material information about the Company, sold over
13 $480 million dollars of their privately held shares of Company stock.
14          Apollo's misleading statements began as early as February 12, 2007, when the
15 Company responded to a *New York Times* article entitled, "Troubles Grow for a
16 University Built on Profits," which questioned whether Apollo's rapid growth and high
17 profits were achieved through deceptive and fraudulent recruitment practices and
18 questioned the academic quality of the school.  Apollo issued a rebuttal to the *New York
19 Times* article entitled, "Fact Check of New York Times Article," in which the Company
20 characterized the allegations as "fiction" and credited much of the inaccurate information
21 on "two disgruntle former employees of the University of Phoenix attempting to extract a
22 large financial settlement…."
23         However, the truth about Apollo's improper tactics began to be revealed on
24 January 7, 2010, after close of trading, when the Company issued a press release detailing
25 its financial results for the quarter ended November 30, 2009.  The release also detailed
26 the preliminary results of the U.S. Department of Education's review of the University of
27 Phoenix's Title IV compliance and stated in part:
28

> The U.S. Department of Education periodically reviews institutions participating in Title IV programs for compliance with applicable standards and regulations. In February 2009, the U.S. Department of Education performed a program review of University of Phoenix's policies and procedures involving Title IV programs. On December 31, 2009, University of Phoenix received the U.S. Department of Education's Program Review Report, which is a preliminary report of the U.S. Department of Education's findings. . . .
>
> The report contains six findings and one concern…the U.S. Department of Education expressed a concern that some students enroll and begin attending classes before completely understanding the implications of enrollment, including their eligibility for student financial aid. The U.S. Department of Education stated its belief that prospective students would be better served if they were more extensively counseled prior to incurring any tuition liability about total program charges, the number of credits that are transferable, the total number of credits required to complete their chosen program and the financial aid available for each academic year of the program.

On the next trading day, January 8, 2010, Apollo shareholders reacted negatively to this previously undisclosed information, and on heavy trading volume the Company's stock price dropped approximately 5% or $3.44 from $63.94 per share at the close of business on January 7, 2010 to $60.50 per share.

On August 3, 2010, the United States Government Accounting Office (the "GAO") published a report that documented further problems at Apollo. The GAO conducted undercover investigations by posing as prospective students and applying for admission at 15 for-profit colleges in six states and the District of Columbia between May 2010 and July 2010. The GAO's investigation found that colleges encouraged fraud and engaged in deceptive and questionable marketing practices. Specifically, the GAO report concluded:

> Undercover tests at 15 for-profit colleges found that 4 colleges encouraged fraudulent practices and that all 15 made deceptive or otherwise questionable statements to GAO's undercover applicants. Four undercover applicants were encouraged by college personnel to falsify their financial aid

010208-11 401709 V1                                4

forms to qualify for federal aid—for example, one admissions representative told and applicant to fraudulently remove $250,000 in savings.  Other college representatives exaggerated undercover applicant's potential salary after graduation and failed to provide clear information about the college's program duration, costs, or graduation rate despite federal regulations requiring them to do so.  For example, staff commonly told GAO's applicants they would attend classes for 12 months a year, but stated the annual costs of attendance for 9 months of classes, misleading applicants about the total costs of tuition.  Admission staff used other deceptive practices, such as pressuring applicants to sign a contract for enrollment before allowing them to speak to a financial advisor about program costs and financing options.

*     *     *

In addition, GAO's four fictitious prospective students received numerous, repetitive calls from for-profit colleges attempting to recruit the students when they registered with Web sites designed to link for-profit colleges with prospective students.  Once registered, GAO's prospective students began receiving calls within 5 minutes.  One fictitious prospective student received more than 180 phone calls in a month.

*     *     *

Programs at the for-profit colleges GAO tested cost substantially more for associate's degrees and certificates than comparable degrees and certificates at public colleges nearby.  A student interested in a massage therapy certificate costing $14,000 at a for-profit college was told that the program was a good value.  However, the same certificate from a local community college costs $520.

Additionally, on August 3, 2010, *Barron's* reported that the GAO investigation results had been leaked to the press:

> For-Profit Stocks Marked Down on Leaked GAO Report
>
> For-profit college shares are being moved to the back of the class after a Government Accounting Office report accused some of deceptive marketing and encouraging fraud.
>
> Education Management (EDMC) is off 6% at a 52-week low; **Apollo Group (APOL) is off 4%** and Corinthian College

> (COCO) was off 2%. **(Emphasis added).** The GAO report, which was leaked ahead of a hearing Wednesday before the Senate Committee on Health, Education, Labor and Pensions, said four undercover applicants were encouraged by college personnel to falsify their financial aid forms to qualify for federal aid, while other college representatives exaggerated potential salaries after graduation and failed to provide clear information about program duration, costs, or graduation rate despite federal regulations requiring them to do so, according to Dow Jones Newswires. The for-profit stocks have been under pressure as a result of criticism, such as from hedge fund manager Steve Eisman, who said in May they are morally akin to the subprime mortgage market, DJ added.

While the GAO report did not specifically identify any for-profit school, it was widely believed that Apollo was among the schools investigated. A CNBC report on August 3, 2010 reported in part the following:

> BMO Capital Markets analyst Jeffrey Silber and Baird analyst Amy Junker said it is likely that the unnamed schools whose counselors misled prospective students included **two campuses owned by Apollo Group**, two owned by Corinthian Colleges and one owned by Washington Post Co., a newspaper publisher that also owns Kaplan school chain. **(Emphasis added)**

As a result of the disclosures between August 3, 2010 and August 6, 2010, shares of Apollo plummeted almost 10% or $4.34 on unusually high trading volume. Apollo stock would sharply decline from a close of $47.14 per share on August 2, 2010 to $42.83 per share on August 5, 2010. Between August 2, 2010 and August 5, 2010, over 16 million shares of Apollo traded – many times the Company's average share volume – and the Company lost more than $680 million in market capitalization during these four days.

The complaints against Apollo and the officer defendants allege violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

## IV. LEGAL ARGUMENT

### A. The Related Actions Should Be Consolidated

The Reform Act provides that the Court shall not select the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C.§ 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as Lead Plaintiff for the consolidated actions." *Id.*

Courts have recognized that securities class actions, in particular, are ideally suited for consolidation pursuant to Rule 42(a), because the unification of related actions expedites pretrial proceedings, reduces case duplication, avoids the contacting of parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *E.g., Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990) ("[C]onsiderations of judicial economy favor consolidation."); *Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439 (S.D. Tex. 2002). The Related Actions present virtually identical factual and legal issues, as they all allege violations of the federal securities laws. Each action names similar defendants and arises from the same underlying facts and circumstances. Thus, consolidation is appropriate.

### B. The Apollo Institutional Investor Group Is Presumptively The Most Adequate Lead Plaintiff

#### 1. The procedure required by the Reform Act.

The Reform Act establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (a)(3)(B)(ii).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Within 60 days after publication of that notice, any person who is a member of the proposed class may apply to the Court to be appointed lead plaintiff. *Id.*

Second, the Reform Act provides, that within 90 days after publication of notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(I). In determining the "most adequate plaintiff," the Act provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *See generally In re Cavanaugh,* 306 F.3d 726, 729-30 (9th Cir. 2002); *Armour v. Network Assocs., Inc.,* 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001).

### 2. The Apollo Institutional Investor Group satisfies all lead plaintiff requirements of the Reform Act.

The Apollo Institutional Investor Group is well qualified to represent the class and has timely responded to the statutory notice of the action by moving this Court to appoint it as lead plaintiff. Apollo Institutional Investor Group members the Electrical Workers Pension Fund and the Birmingham Retirement System have executed certifications listing their respective transactions in Apollo securities, and stating their willingness to serve as representative parties on behalf of all class members. Thus, the Apollo Institutional Investor Group satisfies the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

### a.     The Apollo Institutional Investor Group has a significant financial interest in the relief sought by the class.

During the Class Period, as evidenced by, among other things, the accompanying certifications, the Apollo Institutional Investor Group members purchased Apollo stock and suffered estimated losses of $511,357.93 as a result of Defendants' misconduct. *See* Carey Declaration, Ex. 2. The Apollo Institutional Investor Group members expended $2,139,264.10 to purchase 31,820 shares of Apollo stock during the class period.[3]

### b.     The Apollo Institutional Investor Group otherwise satisfies Rule 23.

At this stage of the proceedings, a court need only consider whether a proposed lead plaintiff meets the typicality and adequacy requirements of Rule 23. *In re Tronox, Inc. Sec. Litig*. Nos. 09 Civ. 6220 (SAS), 09 Civ. 6990 (SAS), 09 Civ. 7116 (SAS), 2009 U.S. Dist. Lexis 95349, at *13 (S.D.N.Y. Oct. 13, 2009); *Takeda v. Turbodyne Technologies,* 67 F. Supp. 2d 1129, 1131-1135 (C.D. Cal. 1999).

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Crossen v. CV Therapeutics*, 2005 U.S. Dist. LEXIS 41396, at *13 (N.D. Cal. Aug. 9, 2005). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Hanlon v*. *Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998).

The Apollo Institutional Investor Group's claims are typical of the claims of other purchasers of Apollo stock. Like other class members, its members purchased Apollo common stock on the open market during the Class Period at prices artificially inflated by

---

[3] For the purposes of calculating losses for this Motion, we used the most expansive class period of the *Roth* action, February 12, 2007 through August 3, 2010.

the materially false and misleading statements issued by Defendants, and have been damaged thereby.[4]  Thus, their claims are typical, if not identical to those of the other members of the class.

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  This requirement is met if "there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation."  *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, *16 (N.D. Cal. Apr. 16, 2007) (citing Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

The Apollo Institutional Investor Group will adequately representat the class, as its interests are clearly aligned with the other members of the class.  Furthermore, there are no facts suggesting that any actual or potential conflict of interest or other antagonism exists between the Apollo Institutional Investor Group and other class members.  And the Apollo Institutional Investor Group has already taken significant steps demonstrating that it has and will protect the interests of the class; it has timely sought to participate as the lead plaintiff for the class, and has retained competent and experienced counsel to prosecute their claim.

**3.    As institutional investors, the Apollo Institutional Investor Group is the preferred choice to serve as lead plaintiff.**

In enacting the Reform Act, Congress expressed its hope that the law would "increase the likelihood that institutional investors will serve as Lead Plaintiffs [in securities cases]" because such investors with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.  Echoing this theme, the Senate Report on the PSLRA states:

---

[4] "A wide-ranging analysis under Rule 23 is not appropriate [at this stage] and should be left for consideration of a motion for class certification."  *Fischler v. Amsouth Bancorp*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts.
>
> Institutions with large stakes in class actions have much the same interests as the plaintiff class generally...

S. Rep. No.104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (citations omitted).  In addition, many courts have acknowledged the preference for institutional investors to serve as lead plaintiffs.  *See In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 734 (S.D. Ind. 2000) ("Congress has expressed a preference for institutional investors to be appointed lead plaintiff."); *Gluck v. CellStar Corp.,* 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *In re Network Sec. Litig.,* 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor....").

Consistent with these authorities, it is unquestionable that the Apollo Institutional Investor Group, comprised of sophisticated institutional investors, is precisely the type of class member qualified to ensure that the litigation proceeds in the best interest of the Class.  *See Bowman v. Legato Systems, Inc.,* 195 F.R.D. 655, 657 (N.D. Cal. 2000) (holding that there is "no doubt" that a large institution with significant monetary losses is "exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements ... by enacting the [PSLRA]").

The Apollo Institutional Investor Group will work diligently to maximize the Class's recovery if appointed lead plaintiff.  To this end, appointment of the Apollo Institutional Investor Group as lead plaintiff would advance one of the Reform Act's primary goals – to encourage institutional investors with large financial stakes in the outcome to assume control over securities class actions.  *In re Network Assos. Sec. Litig.,* 76 F. Supp. 2d at 1020.  Courts have repeatedly recognized that such ability and willingness to exercise effective supervision over the litigation, as the Apollo Institutional

Investor Group will exercise in this case, is a significant factor to consider when appointing a lead plaintiff.  *See, e.g., Bowman,* 195 F.R.D. at 658.

### 4. The Apollo Institutional Investor Group has selected well qualified counsel.

Under Section 21D(a)(3)(B)(v) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class.  The Apollo Institutional Investor Group has selected and retained the law firms of Hagens Berman and Carney Williams as lead counsel.  Both firms are highly competent, have successfully prosecuted many complex securities fraud class actions, in addition to many other types of complex cases, and have repeatedly been appointed to lead counsel roles.  Their firm resumes are attached as Exhibits 5 and 6 to the Carey Declaration.  The Apollo Institutional Investor Group is confident that Hagens Berman and Carney Williams are more than adequately qualified and experienced to litigate this case in the best interest of the class.

## V. CONCLUSION

For the foregoing reasons, movant respectfully requests that this Court (i) consolidate all of the Related Actions currently pending before this Court and any subsequently-filed actions; (ii) appoint the Apollo Institutional Investor Group as lead plaintiff in these actions and any subsequently-filed related actions; and (iii) approve its selection of the law firms of Hagens Berman Sobol Shapiro, LLP and Carney Williams Bates Bozeman & Pulliam, PLLC as co-lead counsel for the class.

RESPECTULLY SUBMITTED this 15th day of October, 2010.

                                             **HAGENS BERMAN SOBOL SHAPIRO LLP**


By   s/Robert B. Carey
Robert B. Carey #011186
Amy M. Wilkins #022762
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003

Darrin L. Williams (*Pro Hac Vice pending*)
Randall K. Pulliam (*Pro Hac Vice pending*)
CARNEY WILLIAMS BATES BOZEMAN
& PULLIAM, PLLC
11311 Arcade, Suite 200
Little Rock, AR 72212

Steve W. Berman (*Pro Hac Vice pending*)
Sean R. Matt (*Pro Hac Vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-Mail: steve@hbsslaw.com
        sean@hbsslaw.com

Reed R. Kathrein
Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
E-Mail: reed@hbsslaw.com
E-Mail: peterb@hbsslaw.com

[Proposed] Co-Lead Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2010, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Lewis S Kahn lewis.kahn@ksfcounsel.com, ecf.notices@ksfcounsel.com

Jason Lee Krajcer jkrajcer@orrick.com

Jennifer Lynn Kroll jkroll@martinbonnett.com, jkroll1@cox.net

Susan Joan Martin smartin@martinbonnett.com, tmahabir@martinbonnet.com, mblawfirm@aol.com

Kim E Miller kim.miller@ksfcounsel.com, paul.balanon@ksfcounsel.com, ecf.notices@ksfcounsel.com

Michael David Torpey mtorpey@orrick.com, sjohnson@orrick.com

Daniel John Tyukody dtyukody@orrick.com, azgarcia@orrick.com

Jeffrey Philip Campisi jcampisi@kaplanfox.com

Frederic S Fox ffox@kaplanfox.com

Michael Craig McKay mmckay@schneiderwallace.com, efilings@schneiderwallace.com, egallegos@schneiderwallace.com

Michael Salcido ms@arizonalegal.com

Joseph R Seidman, Jr Seidman@bernlieb.com

I further certify that on October 15, 2010, I served the attached document via U.S. Mail on the following, who are not registered participants of the CM/ECF System:

| | |
|---|---|
| U Seth Ottensoser | Donald R Hall |
| Bernstein Liebhard LLP | Kaplan Fox & Kilsheimer LLP |
| 10 E 40th St | 850 3rd Ave |
| 22nd Floor | 14th Floor |
| New York, NY 10016 | New York, NY 10022 |

s/  Cindy Johnson